# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **BREWSTER G. STALTER, II** | CIVIL ACTION |
| VERSUS | NO. 16-12786 |
| **ARTHUR J. GALLAGHER RISK MANAGEMENT SERVICES, INC., ARTHUR J. GALLAGHER OF LOUISIANA, INC., AND ARTHUR J. GALLAGHER & CO., COMPANY** | SECTION "S" (4) |

## ORDER AND REASONS

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment on the Defense of Prescription (Doc. #14) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' Rule 12(c) Motion for Judgment on the Pleadings, and Alternative Motion for Summary Judgment (Doc. #15) is **GRANTED.**

## BACKGROUND

Plaintiff, Brewster G. Stalter, II, was employed by defendants, Arthur J. Gallagher Risk Management Services, Inc., Arthur J. Gallagher of Louisiana, Inc., and Arthur J. Gallagher & Co., Company (collectively "AJG"), as an account executive and risk management service agent from March 1, 2001, until October 1, 2007. Stalter specialized in procuring insurance products for large accounts, including municipalities and public entities. Stalter's compensation was 100% commission-based.

When Stalter's employment with AJG ended, he and AJG entered into a contract whereby Stalter would receive a portion of future commissions earned on accounts that he initiated. The agreement provided in pertinent part:

> Going forward, [AJG] agree[s] to broker accounts for [Stalter] provided that [Stalter] meet[s] all of the conditions required of

1

> [AJG] sub-agents. This includes (but not limited to) retaining a valid property and casualty insurance license and maintaining sufficient errors and omissions coverage (currently 1 Million in coverage). [AJG] agree[s] to the following commission splits:
>
> - 35% on existing accounts (see attached expiration report). Commissions to be paid on existing accounts shall exclude all installments on the Jackson Kearney 07-08 renewal.
>
> - 50% on all new brokered accounts.
>
> - Any payments will be made once [AJG] has received payment on a given transaction and when all required documentation is in [AJG's] receipt.

The existing accounts listed on the expiration report are: Evans Industries, Inc.; Excel Home Health Services; Home Medical Resources, Inc.; Neeb-Kearney & Company, Inc.; KTCJ Holding LLC; Orleans Levee District (policy professional liability coverage only); Port of New Orleans; Safeguard Storage Properties; and, Vital Health Services, Inc.

On May 24, 2016, Stalter filed this action in the Civil District Court for the Parish of Orleans, State of Louisiana against AJG alleging that AJG has failed to pay commissions to Stalter for the Loyola University of New Orleans ("Loyola") and New Orleans Public Schools/Orleans Parish School Board ("OPSB") accounts. Stalter alleges that, beginning in 2003, he was the lead account executive for AJG on the Loyola and OPSB accounts in an attempt to gain their insurance business for AJG. To that end, Stalter development professional relationships and produced bids for insurance products to be sold to Loyola and OPSB. Stalter alleges that in March 2004, AJG managers asked him to add insurance brokers to the Loyola account, including John McLaughlin, Bill Powell, and Nancy Sylvester. Stalter added the agents to the accounts, and AJG agreed to pay Stalter 50% of the commission generated from the Loyola account.

Stalter alleges that in 2006, AJG sold insurance policies to Loyola and OPSB that were produced by Sylvester. Stalter claims that AJG sold those insurance products surreptitiously to

deprive him of commissions on accounts that he claims to have generated. Stalter alleges that the Loyola and OPSB accounts were included in the October 1, 2007, termination agreement as accounts for which he would receive future commissions. Stalter also alleges that from October 1, 2007, until March 2015, AJG periodically made commission payments in accordance with the termination agreement, but has not made any payments for the Loyola or OPSB accounts. Stalter claims that AJG's failure to pay commissions on the Loyola and OBSB accounts is a breach of the contract.

On July 17, 2016, AJG removed this matter to the United States District Court for the Eastern District of Louisiana alleging diversity subject matter jurisdiction under 28 U.S.C. § 1332. On April 4, 2017, AJG filed a Motion for Summary Judgment on the Defense of Prescription (Doc. #14), arguing that Stalter's claims related to commissions dating from more than three years prior to the filing of the suit on May 24, 2016, should be dismissed as prescribed. Also, on April 4, 2017, AJG filed a Rule 12(c) Motion for Judgment on the Pleadings, and Alternative Motion for Summary Judgment (Doc. #15), arguing that Stalter's claims related to commissions due on the Loyola and OPSB accounts should be dismissed because those accounts are not listed in the October 1, 2007, commission agreement between the parties.

## ANALYSIS

**I.    AJG's Motion for Summary Judgment on the Defense of Prescription (Doc. #14)**

AJG argues that all of Stalter's claims for commissions due that arose three years prior to his filing this suit are prescribed under Louisiana Civil Code article 3494.

    **A.    Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and

the movant is entitled to judgment as a matter of law." Granting a motion for summary judgment is proper if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits filed in support of the motion demonstrate that there is no genuine issue as to any material fact that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2509-10 (1986). The court must find "[a] factual dispute . . . [to be] 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party . . . [and a] fact . . . [to be] 'material' if it might affect the outcome of the suit under the governing substantive law." Beck v. Somerset Techs., Inc., 882 F.2d 993, 996 (5th Cir. 1989) (citing Anderson, 106 S.Ct. at 2510).

If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial. Celeotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986). The non-movant cannot satisfy the summary judgment burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*). If the opposing party bears the burden of proof at trial, the moving party does not have to submit evidentiary documents to properly support its motion, but need only point out the absence of evidence supporting the essential elements of the opposing party's case. Saunders v. Michelin Tire Corp., 942 F.2d 299, 301 (5th Cir. 1991).

**B.  Prescription**

AJG argues that Stalter's claims related to commissions dating from more than three years prior to the filing of the suit on May 24, 2016, should be dismissed as prescribed under Louisiana Civil Code article 3494. Stalter argues that his action is not one for commissions due, but rather is a breach of contract action because he claims that AJG breached the termination agreement by

failing to pay commissions to him. Thus, Stalter argues that his claims are subject to the ten-year liberative prescription period for contract actions set forth in Louisiana Civil Code article 3499.

Under Louisiana law, the applicable prescriptive period is determined by the character of an action as it is stated in the complaint. Fishbein v. State ex rel. La. State Univ. Health Scis. Ctr., 898 So.2d 1260, 1265 (La. 2005). Louisiana Civil Code article 3499 provides that a personal action, which includes a breach of contract claim, is subject to a ten-year liberative prescription period, unless otherwise provided by law. La. Civ. Code art. 3499. Louisiana Civil Code article 3494 provides a special three-year liberative prescription period for claims to recover compensation for services rendered, including commission payments, which begins to run from the day payment is "exigible," or exact enough to be the subject of a demand. Id. at arts. 3494 & 3495. The Supreme Court of Louisiana has explained that all of the actions covered by article 3494, including actions to recover commission payments, "essentially arise from contractual relationships [and] [a]rticle 3494 does not present a choice between a contract remedy and some other remedy; it merely provides exceptions to the general rule stated in article 3499 that a personal action prescribes in ten years." Starns v. Emmons, 538 So.2d 275, 278 (La. 1989).

In Grabert v. Iberia Parish Sch. Bd., 638 So.2d 645, 646 (La. 1994), the plaintiffs brought a breach of contract action alleging that the defendant paid them less than they were owed. Plaintiffs argued that article 3494 did not apply "because their action for breach of contract [was] distinguishable from a claim for past due wages." Id. The Supreme Court of Louisiana disagreed stating that:

> A petition claiming breach of contract by the payment of wages less than what is due and seeking judgment for the underpaid wages is clearly a cause of action asserting the right to recover unpaid wages. Breach of contract is not a free standing cause of action. It is a legal premise, or principle, which gives rise to the right to claim some

5

> substantive remedy at law. Here that remedy is the recovery of past due wages.
>
> The actions are plainly for salary or wages past due under the allegedly appropriate salary index. The three year prescription provided for in article 3494 is directly and explicitly applicable. The nature of the claim (for under paid wages) is not something different because it arises out of breach of contract. The contract breached made provisions for the very wages sought.
>
> This petition to recover underpaid "compensation for services rendered" is admittedly a personal action as defined by Louisiana Civil Code of Procedure article 422. However, the ten year prescriptive period set forth in article 3499, is only applicable to personal actions "unless otherwise provided for by legislation." La.Civ.Code art. 3499 (West 1994). The prescriptive period for the instant consolidated suits for the recovery of underpaid wages *is otherwise provided for* in article 3494, for that article, as earlier indicated, provides a three year prescriptive period for personal actions seeking "compensation for services rendered."

Id. at 646-47 (footnote omitted); see also Fishbein, 898 So.2d at 1266-67 (applying same reasoning to find that a claim for past due contributions to a retirement plan is a claim for compensation for services rendered that is subject to the three-year prescriptive period found in article 3494).

Statler argues that his claim is not one for past commissions due but for breach of contract. Stalter contends that his claim is more similar to those alleged in Marek v. McHardy, 101 So.2d 689 (La. 1958) or Duer and Taylor v. Blanchard, Walker, O'Qwuin and Roberts, 354 So.2d 192 (La. 1978). Marek involved a breach of contract claim where a physician sued to recover damages that resulted from the defendants' breach of an agreement to give him a ten-percent interest in a medical partnership. The Supreme Court of Louisiana held that the three-year prescriptive period of article 3494 did not apply because the suit was for the right to participate in a partnership fund, not for payment of fees made by the patients. Marek, 101 So.2d at 692. Similarly, in Duer, one law firm sued another for its portion of attorneys' fees that their joint client paid. The Supreme Court of Louisiana found that the law firms were acting in a joint venture, and the right claimed

6

was to participate in the fund resulting from the client's payment of the fee. Duer, 354 So.2d at 194-95. Stalter argues that, because he was no longer employed by AJG when the contract was formed, he and AJG were a joint venture to sell insurance and that he is suing for the right to participate in the fund created by the premium payments.

The nature of Stalter's claims as alleged in the complaint is for payment of past due commissions for selling insurance, which is subject to the three-year prescriptive period of article 3494. Indeed, the contract that Stalter claims AJG breached is specifically intended to make provisions for the commissions he seeks. The contract provided that Stalter would continue to act as an AJG sub-agent to earn future commissions. The contract did not form a joint venture or provide for Stalter to participate in a partnership fund with AJG. Instead, Stalter's relationship with AJG was clearly that of an insurance agent selling insurance products to receive compensation in the form of commissions. Therefore, Stalter's claims are subject to the three-year prescriptive period in article 3494. AJG's motion for summary judgment is GRANTED, and Stalter's claims for commissions that accrued more than three years prior to his filing this action are DISMISSED WITH PREJUDICE.

### III. AJG's Rule 12(c) Motion for Judgment on the Pleadings, and Alternative Motion for Summary Judgment (Doc. #15)

AJG argues that, on the face of Stalter's complaint, he does not have a claim regarding the commissions for the Loyola and OPSB accounts.

#### A. Rule 12(c) Standard

A party may move for judgment on the pleadings after an answer has been filed. Fed. R. Civ. P. 12(c). "The standard for dismissal under Rule 12(c) is the same as that for dismissal for failure to state a claim under Rule 12(b)(6)." Chauvin v. State Farm & Cas. Co., 495 F.3d 232, 237 (5th Cir. 2007). "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead

7

"enough facts to state a claim to relief that is plausible on its face." In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007) (quoting Bell Atl.v. Twombly, 127 S.Ct. 1955, 1964-65 & 1973 n.14 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 1965. The court "must accept all well-pleaded facts as true and view them in the light most favorable to the non-moving party." In re S. Scrap Material Co., LLC, 541 F.3d 584, 587 (5th Cir. 2008). A district court may consider only the contents of the pleading and the attachments thereto. Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498 (5th Cir. 2000) (citing Fed. R. Civ. P. 12(b)(6)).

**B.     The Loyola and OPSB Accounts**

AJG argues that, on the face of Stalter's complaint, he does not have a claim regarding the commissions for the Loyola and OPSB accounts, because those accounts, which Stalter alleges were commenced in 2006 before his termination, were not included on the list of existing accounts for which Stalter would receive future commissions. AJG argues that the termination agreement is unambiguous as to what existing accounts Stalter would receive commissions, and the Loyola and OPSB accounts are not listed. Stalter argues that the term "existing accounts" is ambiguous because it could refer to accounts for which AJG had written insurance or accounts that were in development before he was terminated. Stalter also states in his affidavit that he does not believe that the Loyola and OPSB accounts were produced by the time he was terminated and he should receive commission on them as new accounts generated by his efforts.

In Clovelly Oil Co., LLC v. Midstates Petroleum Co., LLC, 112 So.3d 187, 192 (La. 3/19/13) (citations and quotations omitted), the Supreme Court of Louisiana explained the law applicable to contract interpretation:

8

> Contracts have the effect of law for the parties and the interpretation of a contract is the determination of the common intent of the parties. The reasonable intention of the parties to a contract is to be sought by examining the words of the contract itself, and not assumed. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. Common intent is determined, therefore, in accordance with the general, ordinary, plain and popular meaning of the words used in the contract. Accordingly, when a clause in a contract is clear and unambiguous, the letter of that clause should not be disregarded under the pretext of pursuing its spirit, as it is not the duty of the courts to bend the meaning of the words of a contract into harmony with a supposed reasonable intention of the parties. However, even when the language of the contract is clear, courts should refrain from construing the contract in such a manner as to lead to absurd consequences. Most importantly, a contract must be interpreted in a common-sense fashion, according to the words of the contract their common and usual significance. Moreover, a contract provision that is susceptible to different meanings must be interpreted with a meaning that renders the provision effective, and not with one that renders it ineffective. Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole.

However, if the "written expression of the common intention of the parties is ambiguous," parol or extrinsic evidence is admissible to interpret the contract. Campbell v. Melton, 817 So.2d 69, 75 (La. 2002) (citing Ortego v. State, Through the Dep't of Transp. & Dev., 689 So.2d 1358 (La. 1997)). "A contract is considered ambiguous on the issue of intent when either it lacks a provision bearing on that issue, the terms of a written contract are susceptible to more than one interpretation, there is uncertainty or ambiguity as to its provisions, or the intent of the parties cannot be ascertained from the language employed." Id. (citations omitted). Ambiguous contractual terms are construed against the drafter of the contract. Id.

The termination agreement is unambiguous with respect to the commissions due to Stalter. After his termination, AJG agreed to continue brokering accounts for Stalter, with Stalter having the status of a sub-agent. Stalter would receive a 50% commission on these "new brokered

9

accounts" for which he procures AJG insurance as a sub-agent after his termination. As to any accounts that were in existence before Stalter was terminated, he would receive 35% commissions on renewals of those insurance policies. The existing accounts to which this 35% commission applies are listed in the expiration report, which does not include Loyola or OPSB.

Stalter alleges in his complaint that AJG sold insurance policies to Loyola and OPSB in 2006, and that the policies were produced by Nancy Sylvester. Thus, the allegations in the complaint establish that the Loyola and OPSB accounts were existing accounts at the time of Stalter's termination. Because those accounts are not listed on the expiration report as existing accounts on which Stalter is entitled to a 35% renewal commission, Stalter's allegations in his complaint do not state a claim to commissions on the Loyola and OPSB accounts under the termination agreement. In his affidavit, Stalter states that "[a]t the time [he] was terminated, [he] believed that the Loyola and OPSB accounts were not yet written by AJG." This statement is directly contrary to the allegation in the complaint that the Loyola and OPSB accounts were written in 2006. On a Rule 12(c) motion, the court may consider only the contents of the pleadings and the attachments thereto and accept all well-pleaded facts as true. See Collins, 224 F.3d at 498; In re S. Scrap Material, 541 F.3d at 587. The statement in Stalter's affidavit does not change the contents of the complaint to state a claim. Further, because Stalter alleges that the Loyola and OPSB accounts existed at the time of his termination, they cannot be new brokered accounts after his termination to which he would be entitled a 50% commission. Therefore, AJG's motion for judgment on the pleadings is GRANTED, and Stalter's claims related to commissions on the

Loyola and OPSB accounts based on the termination agreement are DISMISSED WITHOUT PREJUDICE.[1]

## CONCLUSION

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment on the Defense of Prescription (Doc. #14) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' Rule 12(c) Motion for Judgment on the Pleadings, and Alternative Motion for Summary Judgment (Doc. #15) is **GRANTED.**

New Orleans, Louisiana, this  18th  day of May, 2017.

_____
**MARY ANN VIAL LEMMON**
**UNITED STATES DISTRICT JUDGE**

---

[1] Stalter argues that he may have claims against AJG related to the Loyola and OPSB accounts based on theories of unjust enrichment, conversion or other torts. The viability of such claims is not addressed because Stalter did not plead those claims in the complaint.