UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **BREWSTER G. STALTER, II** | **CIVIL ACTION** |
| **VERSUS** | **NO. 16-12786** |
| **ARTHUR J. GALLAGHER RISK MANAGEMENT SERVICES, INC., ARTHUR J. GALLAGHER OF LOUISIANA, INC., AND ARTHUR J. GALLAGHER & CO., COMPANY** | **SECTION "S" (4)** |

## ORDER AND REASONS

**IT IS HEREBY ORDERED** that Defendants' Motion *In Limine* to Exclude the Expert Testimony of Al Diamond (Doc. #40) is **GRANTED**.

## BACKGROUND

This matter is before the court on a motion *in limine* filed by defendants, Arthur J. Gallagher Risk Management Services, Inc., Arthur J. Gallagher of Louisiana, Inc., and Arthur J. Gallagher & Co., Company (collectively "AJG") to exclude the testimony of Al Diamond, plaintiff's purported expert in insurance industry standards.

Plaintiff, Brewster G. Stalter, II, was employed AJG, as an account executive and risk management service agent from March 1, 2001, until October 1, 2007. Stalter specialized in procuring insurance products for large accounts, including municipalities and public entities. Stalter's compensation was 100% commission-based.

When Stalter's employment with AJG ended, he and AJG entered into a contract whereby Stalter would receive a portion of future commissions earned on accounts that he initiated. The agreement provided in pertinent part:

> Going forward, [AJG] agree[s] to broker accounts for [Stalter] provided that [Stalter] meet[s] all of the conditions required of

1

> [AJG] sub-agents. This includes (but not limited to) retaining a valid property and casualty insurance license and maintaining sufficient errors and omissions coverage (currently 1 Million in coverage). [AJG] agree[s] to the following commission splits:
>
> - 35% on existing accounts (see attached expiration report). Commissions to be paid on existing accounts shall exclude all installments on the Jackson Kearney 07-08 renewal.
>
> - 50% on all new brokered accounts.
>
> - Any payments will be made once [AJG] has received payment on a given transaction and when all required documentation is in [AJG's] receipt.

The existing accounts listed on the expiration report are: Evans Industries, Inc.; Excel Home Health Services; Home Medical Resources, Inc.; Neeb-Kearney & Company, Inc.; KTCJ Holding LLC; Orleans Levee District (policy professional liability coverage only); Port of New Orleans; Safeguard Storage Properties; and, Vital Health Services, Inc.

On May 24, 2016, Stalter filed this action in the Civil District Court for the Parish of Orleans, State of Louisiana against AJG alleging that AJG has failed to pay commissions to Stalter for the Loyola University of New Orleans ("Loyola") and New Orleans Public Schools/Orleans Parish School Board ("OPSB") accounts. Stalter alleges that, beginning in 2003, he was the lead account executive for AJG on the Loyola and OPSB accounts in an attempt to gain their insurance business for AJG. To that end, Stalter development professional relationships and produced bids for insurance products to be sold to Loyola and OPSB. Stalter alleges that in March 2004, AJG managers asked him to add insurance brokers to the Loyola account, including John McLaughlin, Bill Powell, and Nancy Sylvester. Stalter added the agents to the accounts, and AJG agreed to pay Stalter 50% of the commission generated from the Loyola account.

Stalter alleges that in 2006, AJG sold insurance policies to Loyola and OPSB that were produced by Sylvester. Stalter claims that AJG sold those insurance products surreptitiously to

2

deprive him of commissions on accounts that he claims to have generated. Stalter alleges that the Loyola and OPSB accounts were included in the October 1, 2007, termination agreement as accounts for which he would receive future commissions. Stalter also alleges that from October 1, 2007, until March 2015, AJG periodically made commission payments in accordance with the termination agreement, but has not made any payments for the Loyola or OPSB accounts. Stalter claims that AJG's failure to pay commissions on the Loyola and OBSB accounts is a breach of the contract.

On July 17, 2016, AJG removed this matter to the United States District Court for the Eastern District of Louisiana alleging diversity subject matter jurisdiction under 28 U.S.C. § 1332. On April 4, 2017, AJG filed a Motion for Summary Judgment on the Defense of Prescription (Doc. #14), arguing that Stalter's claims related to commissions dating from more than three years prior to the filing of the suit on May 24, 2016, should be dismissed as prescribed. Also, on April 4, 2017, AJG filed a Rule 12(c) Motion for Judgment on the Pleadings, and Alternative Motion for Summary Judgment (Doc. #15), arguing that Stalter's claims related to commissions due on the Loyola and OPSB accounts should be dismissed because those accounts are not listed as existing accounts for which Stalter would receive commissions in the October 1, 2007, commission agreement between the parties.

The court granted both of AJG's motions. As to the motion for judgment on the pleadings regarding Stalter's claims related to commissions due on the Loyola and OPSB accounts, the court held that Stlater did not state a claim for recovery on those claims under the unambiguous termination agreement because Stalter alleged that those accounts were in existence when he was terminated and they are not listed on the expiration report as existing accounts for which Stalter would receive future commissions. Further, Stalter did not allege any extra-contractual theories

3

of recovery for commissions on the Loyola and OPSB accounts such as unjust enrichment, conversion or other torts.

AJG filed the instant motion *in limine* to exclude the testimony of Al Diamond, Stalter's purported expert in insurance industry practices. Diamond's report includes one opinion:

> Lacking any evidence to the contrary, it is my opinion that Mr. Stalter conducted himself appropriately as lead participating producer on the AJG team toward solicitation of both Loyola and OPSB accounts and is entitled to share the commissions and fees that were earned by the produces or AJG upon the sale of these accounts.

AJG argues that Diamond's opinion should be excluded because it is an interpretation of the October 1, 2007, commission agreement between the parties, and contractual interpretation is a legal question for the court. Stalter argues that Diamond's opinion is not a contractual interpretation because Diamond's opinion is based on Stalter's work on the accounts, not the contract, and Stalter claims that he has extra-contractual theories of recover for the unpaid commissions on the Loyola and OPSB accounts.

## ANALYSIS

A district court has discretion to admit or exclude expert testimony under the Federal Rules of Evidence. Gen. Elec. Co. v. Joiner, 118 S.Ct. 512, 515 (1997). Rule 702 of the Federal Rules of Evidence provides:

> A witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise, if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;

(c) the testimony is the product or reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

"[E]xpert testimony is admissible only if it is both relevant and reliable." Pipeton v. Biomatrix, Inc., 288 F.3d 239, 244 (5th Cir. 2002).

Stalter seeks to introduce Diamond's testimony to prove that he is entitled to commissions on the Loyola and OPSB accounts. The only opinion Diamond offers is that Stalter is entitled to share in the commissions earned on the Loyola and OPSB accounts. In ruling on AJG's Rule 12(c) motion, this court held that Stalter did not state a claim for commissions on those accounts because Stalter alleged that these accounts were written when he was terminated and they are not included in the October 1, 2007, contract listing the existing accounts on which Stalter would receive future renewal commissions. The court further found that Stalter did not allege any extra-contractual theories of recovery for commissions on the Loyola and OPSB accounts. Because the court has held that Stalter has not stated any viable claims to commissions on the Loyola and OPSB accounts, Diamond's testimony is not relevant to any issue in the case, and AJG's motion *in limine* is **GRANTED**.

## CONCLUSION

**IT IS HEREBY ORDERED** that Defendants' Motion *In Limine* to Exclude the Expert Testimony of Al Diamond (Doc. #40) is **GRANTED**.

New Orleans, Louisiana, this   31st   day of May, 2017.

_____
**MARY ANN VIAL LEMMON
UNITED STATES DISTRICT JUDGE**